We have one final case on the docket this morning. McCullough v. AIG Insurance. And Mr. Neiman, John Cowles Neiman is here for AIG. And Stephen Anthony Marino is here for McCullough. And Mr. Neiman, are you ready to proceed?  You may. Thank you, Judge Wilson. May it please the court, my name is John Neiman. I represent the appellant AIG Hong Kong. This case has gotten a lot easier since the time we filed our briefs. At that time, the 11th Circuit's decision in Atacumpu precluded the application of equitable doctrines to compel arbitration in New York Convention cases involving non-parties. The district court's hands were tied to a certain extent in that regard. But the Supreme Court reversed. Atacumpu is now out. GE Energy is now in. So the question is, what does this court do now? One answer could be to simply vacate and remand to the district court to allow it to apply equitable doctrines to defax, something the district court has not yet had an opportunity to do. And look, a remand of that sort would be okay from my client's perspective. We won't complain if that's the result of today's argument. But I'd like to use the time I have with the panel to try to convince the court, if I can, to end this case now. Rather than simply remanding, this court should go ahead and find that equitable doctrines require the McCulloughs to arbitrate this coverage dispute. This is the right outcome, and nothing that could happen on remand would change that outcome. Mr. Nunn, and this is Judge Newsom, can I ask you just a quick question if we're going to proceed to the merits of the equitable estoppel issue? It seems like there's still some lingering uncertainty about what the applicable law is. Is it Florida law? Is it federal law? Is it Hong Kong slash English law? Does that counsel just busting it, sending it back, and letting the district court take a whack at that issue first? I'm going to give you two answers, Judge Newsom, the first of which is going to sound evasive. So bear with me and let me explain why it's not evasive. I think it – look, if the court feels that that is an issue that needs to be resolved on remand, I understand. I don't actually think that it counsels in favor of remand, and there are really two reasons why. One is that choice of law doesn't particularly matter here because although there is a choice of law question perhaps, there's no conflict of law asserted. The parties don't disagree about what the equitable estoppel principle here is. The only disagreement is over exactly how to provide it. So whether we're dealing with federal common law or Florida state law or Hong Kong slash English law, the principle remains the same, which is that a plaintiff can't have things both ways. A plaintiff can't rely on and seek to enforce the terms of a contract, yet avoid a clause in a contract that requires disputes about the enforcement of that agreement to go to arbitration. But a second perhaps less evasive answer, I suppose, is that I do think that the appropriate law to be applied would be Hong Kong law. And for all the reasons stated and for all the reasons we've given in our briefs, we do think Hong Kong law, like Florida law and like federal common law, would point in the direction of arbitration here. Okay, very well. So in other words, although there may well be a dispute as to which law controls, there's no substantive difference between the equitable principles at stake in the different jurisdictions. That is correct, Judge Anderson. So that point is important in terms of why the court doesn't need a remand to order arbitration here. The other critical reason why I think there isn't a need for a remand here is that the facts aren't going to change on remand either. The McCulloughs are making a claim premised on the rights and duties set out in AIG Hong Kong's policy with Rainforest. Their claim is that the language of this policy is something that requires AIG Hong Kong to cover Von der Goltz's liability to the McCulloughs. And AIG Hong Kong's defenses are all based on the language of that same policy and more specifically, the notion that bodily injury claims are excluded by the policies covered. The policy clearly says that all disputes over its language and enforceability have to be mediated and if mediation doesn't work, have to be arbitrated. All that's undisputed. None of that is going to change on a remand. In other words, although there is a coverage issue outstanding, that issue too clearly is subject to the arbitration clause. That is correct, Judge Anderson. And it's especially subject to the arbitration clause because there's really no colorable way to characterize the facts or the procedural circumstances of this case as anything other than the McCulloughs trying to have things both ways. They want the coverage for Von der Goltz that they say the policy provides. But if that's the case, if they want to go into some tribunal and seek a declaration that Von der Goltz gets coverage under this policy, equitable estoppel under any source of law means they have to accept the policy's conditions about where disputes over these coverage issues have to be decided. This is a pretty easy equitable estoppel case. This isn't like some of the precedents this court has dealt with where you've got a pretty complex commercial transaction, claims by some party that have only a tangential relationship to some arbitration contract that's deep in the background of the case. The McCulloughs' reliance on this contract is direct, open, and obvious. The arbitration issue here is not a close call. This is not the sort of equitable estoppel case that makes lawyers' heads hurt. Well, this is Judge Wilson. Is there any particular reason why AIG waited so long to invoke the arbitration clause? There was a demand letter to tender $5 million, which was the policy limit. AIG refused, and AIG didn't do anything regarding the arbitration clause until three years after the accident. Why didn't AIG timely invoke the arbitration clause? Judge Wilson, I disagree with the characterization that AIG did not timely invoke the arbitration clause. The record shows that AIG informed Von Der Gultz and Rainforest, who are not the plaintiffs here, that AIG Hong Kong believed that the policy required it to cover their defense costs with respect to the McCulloughs' claims, but the policy did not require AIG to indemnify them for any judgment or any settlement. But the demand letter came from the McCulloughs? Well, as an initial matter, there was a demand both for coverage and for representation from AIG. AIG provided representation that stated to Von Der Gultz that it would not indemnify him. Once it became evident that there was a dispute between Von Der Gultz and AIG Hong Kong, AIG Hong Kong invoked the disputes clause long before Von Der Gultz had filed any lawsuit. In fact, Von Der Gultz had not filed any lawsuit seeking a declaration that AIG had an obligation to cover this particular lawsuit. There wouldn't even be an argument if Von Der Gultz were the plaintiff here that AIG had been untimely, but there certainly is not an argument, as the McCulloughs have suggested, that AIG somehow waived its request for arbitration of the coverage dispute with the McCulloughs. I mean the McCulloughs filed their complaint against AIG Hong Kong asserting this bad faith failure to settle claim under Florida law. And AIG's first response after what granted was an initial hiccup in the district court involving a default, but once the default was removed, AIG Hong Kong's first response was to seek to compel arbitration in Hong Kong. This isn't a case where a party to an arbitration agreement has sought a ruling on the merits from the court and seen which way the wind blows and all of a sudden asks for arbitration instead. AIG's first move with respect to the McCulloughs was to seek arbitration immediately. And how soon after the McCulloughs filed suit did AIG invoke the arbitration clause? It's within a few months, I believe. I can get the exact number for you in just a second. Thank you, Ms. Geddes. The third amended complaint was filed in August of 2018, and that was the complaint where the McCulloughs named AIG as a defendant for the first time. AIG's motion to compel was filed in November of 2018, and that was the first responsive filing that AIG made to the complaint after the default was lifted. This is Judge Anderson. I'm a little concerned about just going ahead and ruling on this case rather than vacating it and sending it back to the district court. You assert now that Hong Kong law applies, but I don't see anything like that in your brief, and I don't see any discussion of the Hong Kong law with respect to these equitable principles. You seem to me to have assumed Florida law applies, and I don't see a Florida case directly on point. I think that Lazeur case is fairly close, and it indicates a ruling in your favor by analogy, but it's certainly not squarely on point so that, truth of the matter, you haven't even really briefed equitable estoppel. Because I understand you were constrained by the 11th Circuit decision and limited your briefing really to the derivative slash privity issue that I've been calling it, but I don't see really persuasive briefing on that right now. If we're going to have to rebrief it and maybe re-argue it, it might be just as well to send it back and let the district court do all that. What do you say? Judge Anderson, I see I'm out of time. May I respond? I think that Judge Wilson would like you to. Thank you. So there are a few predicates wrapped up, I think, in your question, Judge Anderson. First, on the choice of law issue, I do think it's the case that the parties have not briefed any definitive statements about which jurisdiction's law applies here. And the reason why that's not a problem is that there's – as I think, as you put it more artfully than I would now, although there may be a question about which jurisdiction's law applies, that's really sort of – any debate over it is sort of academic because the principles are the same across all jurisdictions. If you look at the briefing below, as well as the briefing on appeal, although the focus on appeal was on the privity question, the briefing below cited Florida law, federal law, and a limited Hong Kong law, and the briefing on appeal did as well. So even though you're undoubtedly right, Judge Anderson, that that was not the focus of the appeal given that we were constrained by the 11th Circus decision in Atacumpo at that time, there's enough there, and it's a sufficiently unambiguous point about the way that equitable estoppel doctrine requires this case to be decided at this point that I think there's enough there for the court to go ahead and bring this matter to a close and let the parties focus – bring this arbitration-related matter to a close. And let the parties focus on the merits in the Hong Kong arbitration. If there are no further questions, I've reserved some time for rebuttal. Thank you, Mr. Naaman. We'll hear from Mr. Moreno. Good morning. This is Stephen Moreno on behalf of the McCullers. Judge Anderson, your question at the end is very well taken. There is a parallel appeal before this court right now, case number 20-10830-G, also styled McCullers v. AIG Insurance Hong Kong Limited. And there is a tension between those two that would require the court to consider them both together. Part of the tension sort of undercuts the arguments you heard from AIG today. The issue that Judge Gales decided in this appeal was whether the bad faith claim, the Florida common law bad faith claim brought by the McCullers could be sent to arbitration in Hong Kong that doesn't even have that cause of action. They don't understand or honor a cause of action for bad faith in Hong Kong. What he decided was that pursuant to the 11th Circuit's decision in Otokonpu that the equitable discussions being raised by AIG were not permissible. On June 1, the Supreme Court of the United States sent the case back, remanded it to consider equitable estoppel. But within that, Justice Sotomayor sort of reinforced the idea that any applicable domestic doctrines must be rooted in the principle of consent to arbitrate. So Judge Anderson, you're correct. It's actually the domestic issues, Florida law, that will control the decision making as to whether to send a bad faith claim to a different jurisdiction. Now, I'm not trying to be cute. I know that the judge has also ruled that the bad faith claim is premature. So it hasn't even been decided and he won't decide it pending a decision on whether to provide coverage or not. And he had not made that. There is a pending motion before Judge Gales to allow an amendment to have Judge Gales as the only judge that has jurisdiction over all of the parties to make such a determination. But consistent with the court's suggestion that remanding this back down to a future consideration in light of GE Energy, we would suggest the court also remand with instructions to consider the amendment. Because there is a fundamental misunderstanding of Florida law on bad faith and the privy that goes with it. AIG has admitted, and this is in the judge's order on appeal, that there is no signature by the McCullers to the insurance policy. And in fact, AIG repeatedly insists that the McCullers are afforded no benefit under the insurance policy. So they cannot be incidental beneficiaries or have a more than consequential benefit under a policy that AIG insists provides no coverage. But they are not in privity with the AIG insured because they are judgment creditors. And there has been some loose talk in the briefing about, well, the agreements that the tort lawyers made and then amended and then amended again in between the time where summary judgment against the McCullers was denied. And the court was going to take the case to trial. And the actual trial, the tort lawyers entered a series of agreements that would limit the structure of and ultimately limit the exposure to the rainforest defendants in that litigation. AIG has made much ado about that. But the reality is that's an agreement that was entered into with AIG's knowledge and at least their tacit consent. They were in part paying the lawyers who were negotiating that on behalf of Vanderdulps and the rainforest defendants. But in terms of the privity argument that continues to be made, there is not a privity as would bind the McCullers to any action with the rainforest defendants. And there are numerous cases in Florida and this court, the American Safety Decision, 129 Fed Appendix 540, which cites to the Fifth Circuit's Ranger decision saying that you cannot have a decision solely as against the insured that would bind the third party claimant. Clearly, they're not in privity when an action against one doesn't bind the other. This is Judge Wilson. How do we factor into consideration the agreement that the McCullers negotiated with Vanderdulps? They agreed not to execute on the judgment against them while they pursue their claim against AIG. I'm not sure I understand the court's question in terms of how you factor it in. That was part of the tort lawyers negotiating a give and take for limiting Vanderdulps' exposure. I mean, obviously, the facts show that this could have been a $90 million exposure. And I understand that at some point the numbers become prohibited either way. But the tort lawyers negotiated caps and a balancing of liabilities and risks in effort to protect Vanderdulps and the rainforest defendants. And that consideration that you just referred to was part and parcel of the agreement. It's common in Florida for the judgment creditor in a case like this to withhold adjudication and say, we're not going to beat you up over this judgment so long as you cooperate with us and don't become an impediment to us ultimately moving forward as against the insurance company in our own shoes, in our own right. That document, as AIG concedes, is very clear. There's not an assignment there. Frequently it happens. Like in Kong, the court found that there was an assignment of benefits and rights to the claimant. And that put them directly in the shoes of the insured for purposes of moving forward. Here the court is clear. There is no such assignment. So the consideration is just simply as long as you don't become an impediment, we won't enforce this. But if five years go by and we have not been able to somehow resolve it as against your insurance company, and there's nothing sinister in that either, any insurance company who settles a case like this is going to want a full release of their insured. And so that's contemplated. But in terms of the consideration, it expires after five years. Now to answer your question, Judge Wilson, from earlier, this action was litigated according to the order heavily for three years. The whole time AIG was aware of it. The whole time AIG got reports from tort counsel as to the situation, the meetings and the agreements that were entertained and executed by the tort lawyers were referenced and AIG was advised of them. And I think the record shows that AIG's real concern was how much money was being spent and how much they were being charged by those lawyers, not the nature and content of what they were doing. But in terms of how long AIG knew before finally in, I think, May of 2018, there was a final judgment. And then August, AIG finally got added. Those orders go back for years. And AIG was on notice of this well after the contract expired and for the entire life of the underlying litigation. So if Your Honor is inclined to make inquiry about the waiver argument, I think your original question was accurate. They knew from the very beginning that both the fond adults, the personal counsel, the rainforest defendants, and the claimants were demanding that AIG participate. And AIG steadfastly responded with, there's no coverage here. We're not participating beyond a nominal amount. Counsel, this is Judge Anderson talking. Yes, sir. The briefs and now you at oral argument are asserting very different positions as to whether or not AIG was fully informed about the settlement negotiations between the rainforest defendants and the McCullers. And it may well be that the lawyers representing the rainforest defendants or some of them were being paid by AIG. But it seems to me that is another reason we ought to vacate and let the district court hash that out because we can't make findings of fact. And it seems to me that the confidential dispute resolution agreement and the extent to which it was collusive or the extent to which it violated other provisions of the policy like the one that the insurer was not supposed to settle without consent. All seem to me to be issues that need to be developed and are relevant to the equitable estoppel issue. All of which suggests to me that we ought to send this case back and let the district court hash these things out. And it may be even inappropriate for this court to resolve issues like that which tend to be factual. I appreciate that, Judge Anderson. Page 4 of 23 of our brief, we reference docket entry 528 and a series of attachments to that. And those are all the emails from the tort lawyers to AIG represented by the same counsel that represented it when it made an appearance itself. And I understand that the court is hearing something slightly different now but the record is clear that there was a series of communications and we attached them in the record showing that notice of the various permutations of the agreement and the effects of it and the arbitration itself were provided. It was not a collusive agreement. It was an agreement between tort lawyers to limit exposure and to exchange one equity for another. And as it turns out, it was a very wise agreement because the ultimate arbitration award which was – this went before the trial court and they said, can we do this? Will you approve this process? And Judge Gales did. It was open. It was obvious. It was right there in front of everybody while it was happening. And then it went to arbitration before a neutral who came up with a number that was significantly more than the high-low accounted for. So it was definitely a benefit bestowed upon von der Goltz and the rainforest defendants, and that has been somewhat overlooked or downplayed. But there was no settlement. They just agreed to the parameters of a binding arbitration rather than a trial. Once it was obvious that rainforest was not going to get out or von der Goltz was not going to get out on summary judgment and they were going to face a jury, the injuries here are so catastrophic that the decisions often made to find some way to limit the exposure. I hear the court saying that the indication is to send it back and have Judge Gales sort this out. I heard opposing counsel say he would not be opposed to that concept. That would not be the worst thing for his client. I agree that in light of the GE Power decision with regard to Machu Cumpu that there need to be perhaps further issues developed, and I would agree with the court that the matter should be resolved. The one thing I will bring up to the court's attention though, which I believe is in the briefing but was not discussed today, is that while this was all happening and in the face of a District Court of Florida decision that McCullers do not have to go to Hong Kong, AIG persisted in pursuing the McCullers in Hong Kong. As a defensive measure, the McCullers incurred the liability for hiring counsel in Hong Kong to object to them being called into court. The judge in Hong Kong, after receiving Judge Gales' order, entered a contrary order and now has since entered a judgment for attorney's fees in the amount of hundreds of thousands of dollars against the McCullers. One of the things that has been pending, and perhaps on remand the court can address this with the District Court, is this idea of a bar to parallel proceedings in Hong Kong while the courts in Florida, which AIG has subjected itself to, it's never asked to be removed from these proceedings other than to the extent that it said we should go to arbitration. But the offensive jointer motions that were still pending should perhaps be revived because it's extremely disconcerting to have the McCullers continue to be drawn into and brought into Hong Kong at great expense and being exposed to judgments for vast amounts of money. Again, I know that we also have a parallel appeal on a related issue with regard to the rainforest defendants being dragged into Hong Kong courts and Judge Gales denying the McCullers' right to intervene into that case. So I don't know if the court wants to hold on this decision until the decision is made on that parallel appeal between the same parties. And unless there's any questions, I think that exhausts my topic today. Thank you, Mr. Moreno. Thank you, Your Honor. And we will hear again from Mr. Neiman. Thank you, Judge Wilson, a few things. First of all, I certainly can understand why there might be some momentum in favor of simply vacating and remanding to allow the district court to sort out various things. I nonetheless think that the most appropriate disposition here would simply be along the lines of a reversal and rendering of a judgment that arbitration needs to be had here. Really, there are two reasons why. The first is that despite all the details that Mr. Moreno went into in his argument today, I still have not heard a theory under which, given the governing equitable estoppel principles that would apply here, the McCullers couldn't be subject to arbitration here. Regardless of whether there has been an assignment of the Vondergoltz and Rainforest coverage action to the McCullers here, it remains the case that the gist of their claim is that they want a judgment that AIG Hong Kong has to cover Vondergoltz. They are clearly relying on the language of the contract and asserting a claim against AIG based on it. They are seeking much more than a direct benefit from the contract. It's inconceivable in my mind that there will be any application of equitable estoppel under which they are not required to arbitrate here. Given how protracted the litigation already has been, given that this is a preliminary threshold procedural question of where this case will be resolved rather than what the merits determination is going to be, it makes sense to go ahead and require arbitration at this point in time. Nothing is going to change on remand in that respect. And that leads me to my second point, Judge Anderson. You had asked questions about the party's dispute over whether AIG Hong Kong had knowledge of the confidential dispute resolution agreement and what we would view as effectively a settlement of this litigation without AIG Hong Kong's knowledge or consent. That very much is a disputed question between AIG Hong Kong and the McCulloughs, but it does not go to the question of arbitrability here. It goes to the question of coverage. If AIG Hong Kong is right about this point, then Vondergoltz and Rainforest had no coverage under the policy because they failed to inform AIG Hong Kong about the nature of the dispute agreement and the settlement here. It does not address any questions of waiver by AIG Hong Kong. I see I'm out of time, so unless the Court has questions, thank you. All right. Thank you, Mr. Neiman and Mr. Marino. And that completes our docket this morning. The Court is in recess until 9 o'clock tomorrow morning.